UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CAROL RICCIO and DENNIS RICCIO,

                    Plaintiffs,                     **DECISION AND ORDER**

    -against-                                          CV-03-859 (JMA)

UNITED STATES OF AMERICA,

                    Defendant.
------------------------------------------------------------X

A P P E A R A N C E S:

David Segal, Esq.
30 Vesey Street, Room 900
New York, New York 10007
*Attorney for Plaintiffs*

Roslynn R. Mauskopf
United States Attorney
By: Artemis Lekakis, AUSA
One Pierrepont Plaza
Brooklyn, New York 11201
*Attorney for Defendant*

**AZRACK, United States Magistrate Judge**:

On October 18, 2000, plaintiff Carol Riccio ("plaintiff") was driving home from work when her car was struck by a United States Postal Service ("USPS") truck. On February 21, 2003, plaintiff and her husband, Dennis Riccio (together, "plaintiffs"), commenced the instant action against defendant United States of America ("defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), to recover damages for personal injuries.

On February 23, 2007, this Court presided over a one-day bench trial, consented to by both parties pursuant to 28 U.S.C. § 636(c), to determine liability. Based upon the evidence and arguments presented, liability is apportioned equally between plaintiff and defendant. In so holding,

the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any of the findings of fact may be deemed conclusions of law, they also shall be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings. See Miller v. Fenton, 474 U.S. 104, 113-14 (1985) (noting the difficulty of distinguishing findings of fact from conclusions of law).

## I. FACTUAL BACKGROUND

The time was October 18, 2000 at about 3:00 p.m. The location was the intersection of Hillside Avenue and the southbound service road of the Cross Island Parkway ("CIP") in Queens, New York. At that time and place, there was a collision between a postal truck[1] owned by the United States Postal Service ("USPS") and operated by USPS employee Gary M. Gainer and a Mitsubishi automobile operated by plaintiff, Carol Riccio. This action to recover damages for personal injuries is brought by Carol Riccio and her husband, Dennis Riccio.

Many of the material facts regarding the collision are undisputed. The postal truck was being operated by Gainer in an eastbound direction on Hillside Avenue. The Mitsubishi Galant was being operated by plaintiff in a westbound direction on Hillside. Plaintiff attempted a left turn from the left lane in order to enter the southbound access road to the CIP. While in the middle of the intersection, crossing the westbound Hillside lanes, the postal truck, proceeding west in the right lane, came into contact with the right side of plaintiff's car.

---

[1] The postal truck was a Grumman Long Life Vehicle ("LLV"), which is a small truck that a letter carrier would typically use to deliver mail on the street. In the LLV, the driver sits on the right side of the vehicle.

As to the weather, it was cloudy. It had been raining earlier in the day, but by the time of the incident, it was only lightly misting or drizzling. The streets were wet from the earlier rain.

Both parties have excellent driving histories and are very familiar with the intersection at issue. Plaintiff is employed by the NYC Board of Education as a school aide at an elementary school in Queens, New York. She lives in Brooklyn and drives to and from work every day. Her daily return route includes making the very left turn she was making when the incident at issue occurred. Gainer lives near the intersection and also travels through it regularly during his work shifts as a Vehicle Operations Maintenance Assistant.

As to liability, the real issues are the colors of the traffic lights at the intersection at the time of the accident and whether each driver operated their vehicle with reasonable care. Plaintiff contends she had a green arrow giving her the right of way and a protected left turn. If plaintiff is correct, then Gainer would have had a red light and defendant would be liable to plaintiff for running that red light. Gainer, however, disputes plaintiff's version of the facts and states that he had a green light to proceed through the intersection and, thus, had the right of way.

During the trial, plaintiff testified and did not call any other witnesses. The government called Gainer and accident reconstruction expert Grahme Fischer as witnesses.

**A. Testimony of Carol Riccio**

The intersection where the accident occurred is often busy and is governed by a number of traffic lights. Two sets of traffic lights control westbound Hillside Avenue traffic and, therefore, controlled plaintiff immediately prior to the incident in question. Both sets of lights have the traditional setup of three lights (red, yellow, and green) and, in addition, have two attached left turn

3

arrow lights (yellow and green). In order to make the left turn onto the CIP, drivers must cross three eastbound lanes of Hillside Avenue.

Plaintiff testified that, prior to the accident at issue, she was in the left-most lane. This lane allows a left turn onto the CIP, but it is not a turn-only lane; vehicles in that lane may also proceed straight. The light was red when plaintiff approached the intersection, so she stopped. There were approximately two to three cars ahead of plaintiff while she was stopped at the light.

When the light turned green, the green arrow providing a protected left turn also turned on. The two to three cars in front of plaintiff either turned left or went straight. Plaintiff then began her left turn. She testified that the arrow remained green as she began her turn. Plaintiff estimated her speed during the turn to be approximately ten to fifteen miles per hour. She stated that she proceeded "cautiously" and "slowly."

Plaintiff's vehicle was struck on the front passenger wheel well. Plaintiff estimated that she was half-way through the intersection at the time of impact. She testified that she was perpendicular to Hillside Avenue immediately before the accident, but that the impact pushed her car somewhat eastbound. Plaintiff did not see defendant's vehicle before it struck her. Her view of westbound Hillside Avenue traffic had been partially obscured by a large, yellow school bus that plaintiff testified was stopped at the light in the left-most eastbound lane.

**B. Testimony of Gary Gainer**

At the time of the accident, Gainer was driving eastbound on Hillside Avenue. When he was about a quarter mile from the intersection at issue, he was driving approximately thirty miles per hour, which is the speed limit on Hillside Avenue. As Gainer approached the CIP intersection, he observed traffic and reduced his speed to approximately ten to fifteen miles per hour.

Gainer insists that the slow/stopped traffic was not caused by a red light, but rather by congestion. According to Gainer, the left lane was completely stopped and the middle lane was only inching forward, while the right lane was moving. In order to avoid the congestion, Gainer changed lanes from the middle lane to the right lane. Gainer testified that there was a car in front of him in the right lane that proceeded through the intersection about two to three car lengths ahead of him and, furthermore, that the light was green during his entire approach to the intersection.

As told by Gainer, the yellow school bus was not in the left lane, as plaintiff recounted, but in the middle lane. As noted above, it was inching forward, due to congestion. As Gainer changed lanes from middle to right, he started to pass the bus. Just as he was about even with the door of the bus, plaintiff's vehicle appeared in front of him and, a split second later, the accident at issue occurred. Because of the position of the bus, Gainer's vision of westbound vehicles making the left turn onto the CIP, like plaintiff's car, was obstructed.

**C. Documents in Evidence**

The parties stipulated to the admission of certain documents into evidence. Those relevant to the Court's determination are: (1) the police report documenting the accident at issue (Gov. Ex. A), (2) insurance forms filled out by plaintiffs for their insurer, State Farm Insurance Co. (Gov. Ex. B, C), and (3) New York City Department of Transportation ("DOT") light timing sequence documents related to the intersection at issue (Gov. Ex. F).

The police report corroborates the time, location, and impact details of the accident. Moreover, the reporting officer's accident description includes summaries of statements by both drivers. According to the report, (1) Gainer stated he "didn't see [Riccio's vehicle] til she entered

5

intersection and was unable to stop;" and (2) plaintiff stated that the bus was stopped "due to traffic" and that she "was unable to see traffic in right lane until in intersection." (Gov. Ex. A.)

Plaintiff submitted two separate forms to her insurer, State Farm: an Application for No-Fault Benefits (Gov. Ex. B) and a Supplementary Report (Gov. Ex. C). Due to plaintiff's injury, the insurance forms were filled out by her husband. On both forms, the accident was described as follows: "While cautiously making a left turn and proceding [sic] slowly because a bus stopped in the opposite direction obscured my view, the postal truck in the opposite direction showed no caution in entering the intersection and struck my car." Notably, plaintiff's statements in these documents do not state that she had a green arrow, nor do they allege that Gainer ran a red light.

**D. Testimony of Accident Reconstruction Expert Grahme Fischer**

Accident reconstructionist Grahme Fischer testified for the defendant. Fischer's extensive credentials and experience in this field qualified him as an expert. His overall testimony, however, was not dispositive.

Fischer was retained in this matter by defendant and provided with a variety of documents related to the incident in question, including the police report, forms submitted by plaintiff to her insurer, and the deposition testimony of both drivers. Fischer also investigated the incident by examining the site of the accident, taking measurements, photographs, and video. In addition, Fischer obtained and reviewed data from the DOT that documented the light timing sequence of the intersection on the date and time in question. (See Gov. Ex. F.)

Based on the information obtained from the DOT, Fischer provided the Court with a chart demonstrating the sequence of traffic lights. (Gov. Ex. G.) From this chart, the Court learned that the light which governed plaintiff's left turn provided a protected left turn for thirteen seconds. This

included seven seconds of a green turning arrow, four seconds of an amber turning arrow, and two seconds of only a customary green "ball," but without a corresponding green ball for eastbound traffic. Thereafter, both eastbound and westbound traffic had green lights for sixty-six seconds. During this later time period, when both Hillside Avenue directions have green lights, drivers turning from the westbound left lane onto the CIP are still permitted to make the left turn, but must yield to westbound drivers, who have the right of way.

Fischer also produced a computer simulation of the subject collision. In order to create this simulation, Fischer and his staff needed to draw certain factual conclusions.[2] Because the simulation depended on such factual conclusions, and because such factual conclusions are the province of the Court, and not a reconstruction expert, this Court does not credit Fischer's simulation. As elicited on cross-examination, there are simply too many variables to credit the conclusions defendant asks the Court to draw from the simulation. (Tr. 154:25-156:7.)

## II. FINDINGS OF FACT

Both drivers presented as credible witnesses, yet their versions of the facts are incompatible. Thus, it falls to the Court to determine the most plausible and proven explanation of what happened. The Court credits plaintiff's description of the events leading up to the accident. She sat at a red light behind two to three other cars in the left lane of westbound Hillside Avenue and waited for the light to turn green. When the light turned green and the left arrow came on, the cars began moving. Before the thirteen seconds of her protected left turn elapsed, plaintiff began her turn.

---

[2] Some of the factual conclusions Grahme made in order to produce the simulation include: the number of vehicles in front of plaintiff while she waited to make her left turn, the speed at which those cars made their left turns or went straight, plaintiff's speed during her turn, what point in the light cycle was in effect at the time of the collision, the speed Gainer was traveling, etc.

7

Gainer's version of the facts were not entirely plausible. He maintained that he never had a red light during his entire approach to the intersection. Tellingly, the defense conceded that this was not true in its proposed version of the facts offered via Fischer's simulation.

The most plausible explanation for the accident is that plaintiff began her turn at the end of the protected left turn. By her own account, she proceeded cautiously and slowly. (Tr. 34:17.) During her turn, the light governing westbound traffic turned from red to green. Gainer, who was driving in the middle lane behind the large yellow bus (Tr. 77:14), may not have seen the red light as he approached the intersection. As he switched lanes and checked the light, it was green. (Tr. 77:7-11.) Although the full view of the intersection in front of him had been blocked by the bus, he proceeded through the intersection and struck plaintiff's vehicle.

### III. CONCLUSIONS OF LAW

**A. Federal Tort Claims Act**

This Court has subject matter jurisdiction over this action pursuant to the FTCA, 28 U.S.C. § 1346(b). Under the FTCA, the federal government consents to be sued for its employees' negligent acts or omissions, when such employee is acting within the scope of employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, the FTCA overrides the doctrine of sovereign immunity, which traditionally bars claims against the United States without its consent. See United States v. Mitchell, 445 U.S. 535 (1980).

"The Supreme Court has consistently held that the reference in § 1346(b) to the 'law of the place' means the law of the State which is a source of substantive liability." Saint v. U.S., No. 04 CV 2118, 2007 WL 1189495, at *2 (E.D.N.Y. Apr. 23, 2007) (citing Fed. Deposit Ins. Corp. v.

Meyer, 510 U.S. 471, 478 (1994) and others). In the instant case, the October 18, 2001 accident occurred in Queens, New York; thus, New York law applies. See Goldstein v. United States, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998) (applying New York law to an action brought under the FTCA where the accident complained of occurred in New York).

**B. New York Negligence**

To prevail on a negligence claim under New York law, the plaintiff must satisfy three elements by a preponderance of the evidence. A plaintiff "must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d Cir. 1997); see also, Ducrepin v. United States, 964 F. Supp. 659, 663 (E.D.N.Y. 1997). As this was a bifurcated trial, damages need not be determined at this stage.

A motorist owes a duty of care to other motorists while driving. Furthermore, a motorist has a duty to follow New York traffic regulations. Both vehicles involved in the instant case were governed by New York Vehicle and Traffic Law ("VTL") as they approached and entered the intersection at issue.

This Court determined that, at the time of impact, plaintiff and Gainer both had green lights. Under such conditions, VTL § 1111(a)(1) provides: "Traffic, except pedestrians, facing a steady circular green signal may proceed straight through or turn right or left . . . . Such traffic, including when turning right or left, shall yield the right of way to other traffic lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited." Although Gainer had a green light when he entered the intersection, plaintiff was already lawfully in the intersection. Thus, under VTL § 1111(a)(1), Gainer should have yielded the right of way to plaintiff. Clearly, this is not what

happened. Instead, Gainer entered the intersection without checking to see that the intersection was clear of turning vehicles. In doing so, he breached his duty to plaintiff and acted negligently. Thus, defendant is liable to plaintiff.

The analysis does not end with defendant's liability. An accident can have more than one proximate cause. See Cox v. Nunez, 805 N.Y.S.2d 604, 605 (2d Dept. 2005). Defendant's violation of VTL § 1111(a)(1) is not the only negligent act that occurred during the incident at issue. The movement of plaintiff's vehicle was also governed by traffic laws. Of particular relevance is VTL § 1141, which provides as follows: "The driver of a vehicle intending to turn to the left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close as to constitute an immediate hazard." By turning late in the protected green cycle, into a lane of traffic soon to be occupied by westbound traffic she could not see, plaintiff was unable to discern whether Gainer was close enough to the intersection as to constitute an immediate hazard. Thus, plaintiff violated VTL § 1141. This negligent conduct contributed to the accident at issue.

In sum, according to the findings of fact in this case, Gainer breached his duty of care to plaintiff, the results of which proximately caused injury to her. Thus, plaintiff has established negligence on the part of defendant. Gainer failed to keep a proper look-out: as he approached the intersection and the light turned green, there was a blind spot due to the bus sitting in the middle lane. Gainer was familiar with the intersection and knew that drivers may make a left turn through his lanes of traffic onto the CIP, yet he proceeded through the intersection without taking this blind spot into consideration. Although Gainer breached his duty of care to plaintiff, and was a proximate cause of the collision, his actions were not the only proximate cause. Plaintiff's actions were also

negligent. Under the facts, as determined above, plaintiff breached her duty of reasonable care when she made a late turn through the intersection even though she could not see vehicles that were proceeding eastbound in the right-most lane.

**C. Apportionment**

Since it was determined that the negligence of both plaintiff and postal truck driver Gary Gainer combined to cause this accident, the next task is to apportion liability. In order to do so, "the Court must weigh the relative degree of fault as between the two drivers, and determine as between those persons what part of the total fault shall be apportioned to each by way of a percentage of fault for each." Saint v. U.S., 2007 WL 1189495, at *11.

After reviewing the facts and the law, the Court apportions the liability of the two drivers equally. Thus, the percentage of total fault apportioned to each driver, both plaintiff and Gainer, is 50%.

## III. CONCLUSION

Plaintiffs proved, by a preponderance of the credible evidence, that the accident on October 18, 2000 at the intersection of Hillside Avenue and the southbound Cross Island Expressway, was caused by the negligence of defendant. Yet, plaintiff is also at fault. Fault is apportioned equally, with each driver 50% at fault. It is hereby ordered that judgment be entered in favor of the plaintiffs.

SO ORDERED.

Dated: May 29, 2007
      Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE